729 P.2d 426

Janice K. DONALDSON,
Plaintiff-Appellant,

v.

Larry P. DONALDSON,
Defendant-Respondent.

No. 15924.

Court of Appeals of Idaho.

Dec. 1, 1986.

Reginald R. Reeves (Denman & Reeves), Idaho Falls, for plaintiff-appellant.

Dwight E. Baker, St. Clair, Hiller, Wood, McGrath, St. Clair & Baker, Idaho Falls, for defendant-respondent.

BURNETT, Judge.

This is a divorce case. The question presented is whether a magistrate correctly exercised personal jurisdiction over a non-resident defendant. The district court, acting in an appellate capacity, held that the magistrate lacked such jurisdiction. We agree with the district court.

The following facts are not in dispute. Larry Donaldson, a resident of California, sought and obtained in that state an interlocutory decree dissolving his marriage to Janice Donaldson, who had moved to Idaho several years earlier. The California decree awarded the wife custody of a child living with her in Idaho. In lieu of child support, the decree provided that the husband relinquish his claim to any community property in Idaho. However, before the California decree became final, the wife filed the instant action for divorce in Idaho. She asked, *inter alia*, for child support in addition to the Idaho community property and for an award of attorney fees. The husband was personally served a copy of the summons and complaint in California. He requested the Idaho court to dismiss the action, claiming that the court lacked personal jurisdiction to award child support or attorney fees against him. The magistrate refused to dismiss any portion of the wife's complaint. He entered a decree containing child support and attorney fee awards. The husband appealed. After the district court ruled in the husband's favor, the wife appealed, bringing the case before us.

I

Before reaching the merits of the husband's challenge to personal jurisdiction, we must decide whether he waived the challenge by voluntarily appearing in the case. The husband initially responded to the Idaho summons and complaint by writing a letter to the court, expressing surprise at the Idaho suit and stating that an interlocutory decree had been entered in California. The husband subsequently engaged Idaho counsel and moved to dismiss that portion of the complaint seeking

awards of child support and attorney fees. He neither resisted nor agreed to other relief sought by the wife, consistent with the California decree.

After the magistrate denied the husband's motion to dismiss, the parties signed a stipulation fixing the amounts of child support and attorney fees. However, the stipulation perpetuated the issue of personal jurisdiction:

> [T]he parties agree and acknowledge that the said defendant entered into this stipulation solely and only on the condition that the State of Idaho has jurisdiction over the defendant independently of the execution and submission of this stipulation to the court, and the parties agree that the defendant hereby reserves the right to object to any order, judgment or decree, or the enforcement thereof, on jurisdictional grounds....

The wife now contends that by writing a letter to the court, and by signing the stipulation, the husband waived his jurisdictional challenge.

Had this case arisen before the Idaho Rules of Civil Procedure were adopted, the wife might well have been correct. In those days, challenges to jurisdiction could be made only by "special appearances" entered exclusively for that purpose. Any participation by a defendant in the litigation beyond this purpose was deemed a general appearance, by which the defendant waived all jurisdictional objections. Lewis, *Special Appearances in Idaho: A Conflict in the Idaho Rules of Civil Procedure and a Suggested Resolution*, 15 IDAHO L.REV. 9 (1978) (hereinafter Lewis, *Special Appearances*); LEWIS, IDAHO PRE–TRIAL CIVIL PROCEDURE, I–21 (Idaho Law Foundation 1982) (hereinafter LEWIS, PRE–TRIAL CIVIL PROCEDURE). If a defendant did not prevail on his jurisdictional challenge, he was forced either to accept a default on the merits and to appeal on jurisdiction, or to defend the action on its merits and to waive his jurisdictional challenge. Beatty, *Special Appearances in Idaho: A Response to the Proposal of an Interlocutory Appeal*, 15 IDAHO L.REV. 235 (1979).

However, the Rules of Civil Procedure, adopted in 1958, made it easier to raise a jurisdictional issue. The Rules were patterned largely after federal practice which historically had been more receptive to jurisdictional challenges. Indeed, more than a century ago, in an appeal from an Idaho territorial court, the United States Supreme Court held:

> [I]llegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is therefore compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived.

*Hyde v. Harkness*, 8 Otto 476, 479, 98 U.S. 476, 479, 25 L.Ed. 237 (1878).

Today Rule 12(b) of the Federal Rules of Civil Procedure allows a defendant to challenge personal jurisdiction by a pre-answer motion or by the answer itself if no such motion is filed. The Rule further provides that "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." Of course, Rule 12(h) requires that objections to personal jurisdiction and to the sufficiency of process be set forth in the first responsive pleading; but they are not waived merely because other defenses are raised simultaneously. 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1362 (1969) (hereinafter WRIGHT & MILLER). Moreover, a defendant who unsuccessfully objects to personal jurisdiction may proceed on the merits without waiving the objection. WRIGHT & MILLER § 1351.

Idaho Rules 12(b) and (h) are identical to their federal counterparts in all respects material to this case. They permit a defendant to raise all available defenses and then to proceed on the merits without waiving a jurisdictional challenge. *Nelson v. World Wide Lease, Inc.*, 110 Idaho 369, 716 P.2d 513 (Ct.App.1986).

These rules must be read together with Rule 4(i). As originally drafted, Rule 4(i) appeared to conflict with Rules 12(b) and (h). It provided that "[t]he voluntary appearance of a party, or the service of any pleading by him, is equivalent to personal service of the summons and a copy of the complaint upon him." This language literally could have been read as applying only to attacks upon formal defects in service of process. *See* Lewis, *Special Appearances*. But the compiler's notes stated that the rule was "intended to cover" the provisions for voluntary appearance provided by I.C. §§ 5–512, 12–504, and 16–303. Those provisions, now repealed, had been interpreted to create a waiver of jurisdictional objections where a party defended on the merits. In a 1971 decision, the Idaho Supreme Court cited Rule 4(i) in support of the proposition that a party waives his right to appeal jurisdictional issues by defending on the merits. *Smestad v. Smestad*, 94 Idaho 181, 484 P.2d 730 (1971).

██ However, Rule 4(i) has been amended since *Smestad.* At times relevant to the husband's actions in this case, the rule provided that "[t]he voluntary appearance of a party or the service of any pleading by him is equivalent to personal service of the summons and a copy of the complaint upon him, *unless that voluntary appearance or pleading asserts any of the defenses listed under Rule 12(b)(2), (4) or (5)."* (Emphasis added.) This amendment brought the rule into greater conformity with Rules 12(b) and (h).[1] It cleared the way for a party to challenge personal jurisdiction or service of process by making the objection promptly at the outset of the litigation,

either in a pre-answer motion or in the answer. The joinder of other defenses did not prejudice the objection. The defendant was entitled to address the merits of the case without losing his right to raise the jurisdictional issue on appeal. *See* LEWIS, PRE–TRIAL CIVIL PROCEDURE. Accordingly, we deem it clear in this case that the husband did not waive his jurisdictional challenge by signing a stipulation on the merits of the child support and attorney fee issues, after his motion to dismiss had been denied.

The husband's letter to the court presents a thornier problem. Despite the post-*Smestad* amendment of Rule 4(i), Idaho practice continued to differ from federal practice in one respect. Under the Federal Rules, entering an appearance before making a jurisdictional objection did not constitute a waiver of the objection. *See Marcial Ucin, S.A. v. S.S. Galicia,* 723 F.2d 994 (1st Cir.1983); 2A MOORE'S FEDERAL PRACTICE (2d Ed.) ¶ 12.12 (hereinafter MOORE). On the other hand, Idaho Rule 4(i), at times relevant here, provided that if a jurisdictional objection was not asserted by motion or answer at the time of the appearance, the objection was waived. We must decide whether the husband's letter to the court constituted such a voluntary appearance.

The term "appearance" is nowhere defined in the Idaho Rules. Although an Idaho statute at one time provided a definition of "appearance," that statute was repealed in 1975. *See* former I.C. § 12–504. Recent cases discussing the term have focused on the "appearance" necessary to trigger a requirement under Rule 55(b)(2)— that three days' notice be given a defendant who has "appeared" in the action, before a default judgment is entered against him. *See Newbold v. Arvidson,* 105 Idaho 663, 672 P.2d 231 (1983); *Sherwood & Roberts, Inc. v. Riplinger,* 103 Idaho 535, 650 P.2d 677 (1982); I.R.C.P. 55(b)(2). In each case our Supreme Court has examined con-

---

1. Rule 4(i) was again amended in 1984. The amendment further alleviates any tension between Rule 4(i) and Rule 12. We believe our analysis would apply to Rule 4(i) in its latest form.

duct by the defendant to determine whether it evinced an intent to defend the action.

■ We are not certain that "appearance" necessarily carries the same meaning in Rule 4(i) as that ascribed to it in a default context. But even if it did, the husband's letter to the court in this case would not constitute an "appearance." The letter contained no expression of intent to defend the divorce action in Idaho. To the contrary, as we have seen, it simply referred to the California decree and expressed surprise that suit had been filed in Idaho. The mere act of writing of a letter, without more, does not constitute an appearance subjecting a party to personal jurisdiction of the court. *See Newell v. Newell,* 77 Idaho 355, 293 P.2d 663, *cert. denied,* 352 U.S. 871, 77 S.Ct. 95, 1 L.Ed.2d 76 (1956). Accordingly, we hold that the letter in this case did not constitute an appearance waiving the husband's jurisdictional challenge.

## II

■ We now turn to the jurisdictional challenge itself. The husband concedes that he was served process in the manner authorized by I.C. § 5–514, Idaho's "long arm statute." The statute provides that *if* an Idaho court has personal jurisdiction over a defendant, personal service of the summons outside the state has the same force and effect as service within the state. *See B.B.P. Association, Inc. v. Cessna Aircraft Co.,* 91 Idaho 259, 420 P.2d 134 (1966). Service alone does not confer jurisdiction. The defendant and the case must fit within one of the categories enumerated in the statute:

> [A]ny person ... whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits ... to the jurisdiction of the courts of this state *as to any cause of action arising from the doing of any of said acts:*
>
> > (a) The transaction of any business within this state which is hereby defined as the doing of any act for the

purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any ·part thereof of such person, firm, company, association or corporation;

> > . . . .
>
> > (c) The ownership, use or possession of any real property situate within this state;
>
> > . . . .
>
> > (e) The maintenance within this state of matrimonial domicile at the time of the commission of any act giving rise to a cause of action for divorce or separate maintenance. [Emphasis added.]

The intent of the Legislature when enacting this statute was to grant state courts all personal jurisdiction available under the Due Process Clause of the United States Constitution. *See Baker v. Baker,* 100 Idaho 635, 603 P.2d 590 (1979); *Doggett v. Electronics Corp. of America,* 93 Idaho 26, 454 P.2d 63 (1969). Thus, the scope of personal jurisdiction under the statute is, in essence, a constitutional question.

"In order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). With this language the Supreme Court abandoned the strict territorial standard of personal jurisdiction previously espoused in *Pennoyer v. Neff,* 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877). *International Shoe* established a more fluid test of due process. The most prominent effect of *International Shoe* has been to increase the ability of state courts to acquire personal jurisdiction over nonresident defendants. But another, less obvious, effect has been to erode the conceptual basis for the traditional distinction between jurisdiction over a marriage and jurisdiction over matters ancillary to dissolution of the marriage—

such as division of property, fixing responsibilities for child custody and support, or allocating legal costs connected with the dissolution itself.

Historically, jurisdiction over the marital status has been held to exist wherever one of the parties is domiciled. *Williams v. North Carolina,* 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). In many states, including Idaho, the marital status has been treated as though it were a *res* that follows each party from one domicile to another. *Newell v. Newell, supra.* Accordingly, if a nonresident defendant is properly served, the court of any state where the plaintiff is domiciled may issue a divorce decree entitled to full faith and credit in all other states.[2] *Id.* Such exercise of jurisdiction has not been questioned since *International Shoe* was decided.

It cannot be gainsaid that in a functional sense, jurisdiction over the marital status is tantamount to personal jurisdiction over the parties. If this broad jurisdiction does not offend due process, coextensive personal jurisdiction logically should be recognized in matters ancillary to dissolution. But the United States Supreme Court has declared otherwise. *In Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), the Court struck down an attempt by a California court to impose an obligation upon a nonresident, nondomiciliary father to support his child in California.[3] The Court held that insufficient contacts existed between the father and California. The fact that the child and the mother lived in California was not regarded as a contact. The Court explained that "minimum contacts" must be the product of the defendant's purposeful acts, not

mere acquiescence in unilateral acts by the plaintiff, such as the mother's decision to live in California.[4] The Court thus likened child support disputes to tort or commercial litigation, in which it had long been held that a defendant is not subject to personal jurisdiction in the forum state unless he has purposely availed himself of the privilege of conducting activities there. *E.g., Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

We respectfully doubt the wisdom of applying a more rigorous standard of jurisdiction to ancillary matters such as child support than to the marital relationship itself. These inconsistent standards produce a splintering of judicial authority, diminishing the ability of the courts to deal coherently with the breakdown of a marriage and the problems attendant to it. Nevertheless, we deem ourselves constrained to apply the "minimum contacts" test, as interpreted in *Kulko,* to the instant case.

The magistrate denied the husband's motion to dismiss, and held him subject to personal jurisdiction in Idaho, upon finding the following facts:

Even though the [husband] denies he has ever resided in the state of Idaho, [he] admits that [his wife] moved to Idaho in May of 1978. Furthermore, it is also admitted that the parties acquired community property consisting of a store and a residence in Idaho. It is further admitted that the minor child of the parties resides in Idaho with her mother.

The magistrate further found that the husband's acquisition and operation of a store in Idaho "either personally or through his

---

**2.** In the present case, it has not been argued that the interlocutory decree of dissolution in California was entitled to full faith and credit. No counterpart to such a decree exists under Idaho law. Presumably, the husband has not urged full faith and credit because an interlocutory decree is not a final judgment.

**3.** The Court noted that the mother could obtain support by suing in the state where the father resided or by commencing an action under the Uniform Reciprocal Enforcement of Support

Act. Those options presumably are available to the wife in the instant case as well.

**4.** *Kulko* involved a post-divorce proceeding rather than a request for support contemporaneous with a divorce. However, the Supreme Court's opinion makes it clear that personal jurisdiction to impose a support obligation turns upon the existence of "minimum contacts" with the obligor, not upon the sequence of court proceedings.

wife" constituted the transaction of business in Idaho and gave the court personal jurisdiction in regard to child support and attorney fees.

■ *Kulko* makes it clear that mere presence of the wife and child in Idaho does not represent a contact between this state and the husband. There is no evidence that the wife's move to Idaho was anything but a unilateral act. The record does not show that the husband purposefully availed himself of the privilege of conducting activities in Idaho.

■ Neither does the presence of community property in this state support the exercise of personal jurisdiction. Idaho Code § 5–514 permits the assertion of such jurisdiction only as to a cause of action "arising out of" the transaction of business or ownership of real property in this state. This limitation is typical in long-arm statutes nationwide. *See* Annotation, *In Personam Jurisdiction—Nonresident,* 4 A.L.R. 4th 955, § 3 (1981). The husband has not contested the magistrate's power to dispose of community property located in Idaho. However, the demand for child support and attorney fees does not "arise out of" the community's ownership of property in this state.[5]

A nexus must exist between the "minimum contacts" and the subject matter of the litigation. *See, e.g., Thompson v. Ecological Science Corporation,* 421 F.2d 467 (8th Cir.1970); *State ex rel White Lumber Sales, Inc. v. Sulmonetti,* 252 Or. 121, 448 P.2d 571 (1968); *Markby v. St. Anthony Hospital Systems,* 647 P.2d 1068 (Wyo. 1982). Concededly, in some cases, a defendant's contacts with the forum state may be so pervasive, or of such a special nature, that they support the exercise of personal jurisdiction on matters not directly related to those contacts. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *International Shoe Co. v. Washington, supra.* Thus, in *Nelson v. World*

*Wide Lease, Inc., supra,* we recently held that due process permits the assertion of personal jurisdiction over a foreign corporation in an action arising out of a transaction similar—but not related—to other contacts with Idaho, where the corporation had appointed a statutory agent to receive process in Idaho. However, no pervasive or special contacts exist here. If we were to read I.C. § 5–514 as authorizing personal jurisdiction over a nonresident defendant based solely upon his interest in property located here, even though the cause of action is unrelated to the property, we would push the statute beyond the bounds of due process as delineated by the United States Supreme Court. *See Shaffer v. Heitner, supra.*

■ In any event, the existence of community property in Idaho could well have resulted from unilateral acts by the wife. Even when spouses are separated, their earnings and acquisitions constitute community property. *E.g., Donndelinger v. Donndelinger,* 107 Idaho 431, 690 P.2d 366 (Ct.App.1984). The wife has not shown that the community property in Idaho was generated by activities of the husband. A party asserting personal jurisdiction bears the burden of proof. *Schneider v. Sverdsten Logging Co.,* 104 Idaho 210, 657 P.2d 1078 (1983). If the issue is disputed, the plaintiff must prove jurisdiction at trial by a preponderance of the evidence. *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389 (9th Cir.1984); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir.1981); *United States v. Montreal Trust Co.,* 358 F.2d 239 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). *See generally* MOORE ¶ 1207. The wife in this case has not begun to meet such a burden.

We have considered the wife's arguments in support of the magistrate's decision. We find them to be unavailing in light of the authorities discussed here. We conclude that the husband timely raised

---

**5.** One learned treatise has suggested that business contacts never should provide a basis for asserting personal jurisdiction over a party in a nonbusiness cause of action. E. SCOLES AND P. HAY, CONFLICT OF LAWS § 8.26 (1984).

and preserved his jurisdictional challenge. The wife failed to adduce proof of facts establishing the existence of personal jurisdiction. In the absence of personal jurisdiction, service of process under I.C. § 5–514 was ineffective. Accordingly, the decision of the district court is affirmed. Costs to respondent. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.